# Exhibit B

# IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

## CIVIL DIVISION

NOVA BANK, successor by merger to
Pennsylvania Business Bank,

                        Plaintiff

      vs.

CAROL A. MROZEK and KENNETH J.
MROZEK,
                Defendants

:
:
:
:
:
:
No.
:
:
:
:
:



Case Number: 2010-05948     Judge: 26
Receipt:    2010-15-01207    Filing: 9034984
Code: 5001
Patricia Bachtle - Bucks Co Prothonotary
B09      6/14/2010 3:17:13 PM

**NOTICE OF FILING JUDGMENT**

( X )    Notice is hereby given that a default judgment in the above-captioned matter has been

        entered against you in the amount of $1,483,190.10 on June 11, 2010.

( X )    A copy of all documents filed with the Prothonotary in support of the within judgment

        is/are enclosed.

                                     **Patricia L. Bachtle**
                                     **Prothonotary**

                   By:_____
                                       Deputy

If you have any questions regarding this Notice, please contact the filing party:

                        Steven J. Adams, Esquire
                        Stevens & Lee
                        111 N. Sixth Street
                        P.O. Box 679
                        Reading, PA   19603-0679
                        (610) 478-2133

(This Notice is given in accordance with Pa.R.C.P. No. 236.)

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

Franklin _____ County

| For Prothonotary Use Only: | |
|---|---|
| Docket No: | _TIME STAMP_ |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Transfer from Another Jurisdiction
- ☐ Petition
- ☐ Declaration of Taking
- ☐ Notice of Appeal

Lead Plaintiff's Name:
**Nova Bank**

Lead Defendant's Name:
**Carole A. Mrozek and Kenneth J. Mrozek**

☐ Check here if you are a Self-Represented (Pro Se) Litigant

Name of Plaintiff/Appellant's Attorney: **Steven J. Adams**

Are money damages requested? :  ☒ Yes   ☐ No

Dollar Amount Requested:
(Check one)   _____ within arbitration limits
   ✓ outside arbitration limits

Is this a *Class Action Suit?*   ☐ Yes   ☒ No

**SECTION B**

**Nature of the Case:**  Place an "X" to the left of the ONE case category that most accurately describes your *PRIMARY CASE*. If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

_____
_____

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other

_____
_____

- ☐ Other: _____
_____
_____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure
- ☐ Partition
- ☐ Quiet Title

- ☐ Other: _____
_____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Zoning Board
- ☐ Statutory Appeal: Other

_____

Judicial Appeals
- ☐ MDJ - Landlord/Tenant
- ☐ MDJ - Money Judgment
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin

- ☐ Other:
  **Complaint for Confession of Judgment**

*Pa.R.C.P. 205.5*

2/2010

NOVA BANK, successor by merger to      :   IN THE COURT OF COMMON PLEAS OF BUCKS
Pennsylvania Business Bank,               :   COUNTY, PENNSYLVANIA
                                             :   CIVIL ACTION - LAW
                      Plaintiff      :
                                                   :
                vs.                    :
                                                 :   No.
CAROLE A. MROZEK and KENNETH J.     :
MROZEK,                                          :
                                                   :
                      Defendants    :

## CONFESSION OF JUDGMENT

Pursuant to the authority granted in the warrants of attorney contained in the

Commercial Guaranties, true and correct copies of which are attached to the Complaint filed in

this action, we appear for the defendants and confess judgment in favor of plaintiff, NOVA

Bank, successor by merger to Pennsylvania Business Bank, and against the defendants, Carole

A. Mrozek and Kenneth J. Mrozek, jointly and severally, in the amount of $1,482,190.10,

itemized as follows:

| | |
|---|---:|
| Principal | $1,222,557.68 |
| Accrued Interest | 61,682.62 |
| Accrued Late Charges | 4,989.75 |
| Release Fees | 324.00 |
| Attorneys' Fees (15% of principal and interest) | 192,636.05 |
| TOTAL | $1,482,190.10 |

plus interest after June 1, 2010 at the rate of $271.68 per day, plus costs of suit.

Dated:  June 11, 2010                  STEVENS & LEE

                                    By
                                       Steven J. Adams

Steven J. Adams, Esquire
I.D. No. 56293
STEVENS & LEE
111 N. Sixth Street
P.O. Box 679
Reading, PA 19603-0679
(610) 478-2133
(610) 988-0841
sja@stevenslee.com
Attorneys for Plaintiff

| | | |
|---|---|---|
| NOVA BANK, successor by merger to<br>Pennsylvania Business Bank, | : | IN THE COURT OF COMMON PLEAS OF<br>BUCKS COUNTY, PENNSYLVANIA |
| | : | CIVIL ACTION - LAW |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | No. |
| CAROLE A. MROZEK and KENNETH J.<br>MROZEK, | : | |
| | : | |
| Defendants | : | |

## COMPLAINT FOR CONFESSION OF JUDGMENT

Plaintiff Nova Bank, successor by merger to Pennsylvania Business Bank,

confesses judgment against defendants Carole A. Mrozek and Kenneth J. Mrozek, jointly and

severally, in the amount of $1,482,190.10, plus interest after June 1, 2010, at the rate of $271.69

per day, as provided for in those certain commercial guaranties, and in support thereof, avers as

follows:

1. Plaintiff Nova Bank, successor by merger to Pennsylvania Business Bank

(collectively, the "**Lender**"), maintains a place of business at Suite 420, 1235 Westlakes Drive,

Berwyn, Pennsylvania, 19312.

1

2.  Defendants Carole A. Mrozek and Kenneth J. Mrozek (the "**Defendants**") are adult individuals with a last known address of 2219 Langhorne-Yardley Road, Langhorne, Pennsylvania 19047-8244.

3.  On or about May 17, 2005, Lender made a business loan to Suzuki Fun Center, Inc. (the "**Borrower**"), in the principal amount of $1,000,000 (the "**Loan**").

4.  To evidence its obligation to repay the Loan, on or about May 17, 2005, the Borrower executed and delivered to Lender its promissory note in the principal amount of $1,000,000 plus interest at the rate set forth therein (the "**Note**").

5.  A true and correct copy of the Note is attached hereto, marked as Exhibit "A" and incorporated herein by reference.

6.  To induce Lender to make the Loan, the Defendants guaranteed repayment of the Loan and all other indebtedness owed by Borrower to Lender (the "**Indebtedness**") by executing and delivering to Lender Commercial Guaranties dated May 17, 2005 (collectively, the "**Guaranties**").

7.  True and correct copies of the Guaranties are attached hereto, marked collectively as Exhibit "B" and incorporated herein by reference.

8.  To secure payment of her obligations to Lender under her Guaranty, on or about May 7, 2005, Defendant Carole A. Mrozek executed and delivered to Lender a mortgage (as amended, the "**Mortgage**") pursuant to which she granted to Lender a first lien security interest in that certain real property owned solely by her at that time, together with the improvements erected thereon, located at 2639 Bristol Pike, Bensalem, Pennsylvania, 19020 (the "**Mortgage Property**"), which Mortgage was recorded in the Bucks County Records on July 7, 2005, at Land Record Book 4516, Page 2181.  A modification of the Mortgage was recorded in

2

the Bucks County Recorder's Office on December 12, 2006, at Land Record Book 5225,

Page 1834, which modification increased the face amount of the Mortgage to $1,300,000.00.

9. On or about October 13, 2006, Borrower, Defendants and Lender entered into

a Change in Terms Agreement pursuant to which the principal amount of the Loan was increased

to $1,300,000 and the interest rate was increased to 8.0% (the "**Change in Terms Agreement**").

10. A true and correct copy of the Change in Terms Agreement is attached hereto,

marked Exhibit "C" and incorporated herein by reference.

11. On or about March 16, 2010, Lender notified the Borrower and the

Defendants in writing that as a result of the Borrower's failure to make timely payments when

due under the Note, Lender had elected to accelerate payment of all sums due under the Note and

demanded that the Borrower and/or the Defendants pay these accelerated obligations in full by

March 23, 2010 (the "**Demand Letter**").

12. A true and correct copy of the Demand Letter is attached hereto, marked

Exhibit "D" and incorporated herein by reference.

13. The Borrower and the Defendants failed to pay the accelerated sums due

under the Note by March 23, 2010, and an event of default presently exists under the Guaranties.

14. The Guaranties contain warrants of attorney that authorize and empower any

attorney or any clerk of any court of record, to appear for and confess judgment against the

Guarantors for such sums as are due and/or may become due on any of the Indebtedness, with or

without declaration, with costs of suit, without stay of execution and with an amount, for lien

priority purposes, equal to fifteen percent (15%) of the amount of the judgment, but not less than

one thousand dollars ($1,000), added for attorney's fees.

3

15.  As of June 1, 2010, the total amount of the outstanding Indebtedness that is recoverable under the Guaranties was $1,482,190.10, itemized as follows:

| | |
|---|---:|
| Principal | $1,222,557.68 |
| Accrued Interest | 61,682.62 |
| Accrued Late Charges | 4,989.75 |
| Release Fees | 324.00 |
| Attorneys' Fees (15% of principal and interest) | <u>192,636.05</u> |
| TOTAL | $1,482,190.10 |

16.  Interest will continue to accrue on the unpaid principal balance of the Indebtedness after June 1, 2010, at the rate of 8% per annum, or $271.68 per day.

17.  Judgment has not been entered previously against the Defendants on the warrants of attorney contained in the Guaranties in this or any other jurisdiction.

18.  The Guaranties have not been assigned to any other person.

19.  Judgment is not being entered by confession against natural persons in connection with a consumer credit transaction.

4

WHEREFORE, plaintiff Nova Bank requests that judgment be entered in its favor and against defendants Carole A. Mrozek and Kenneth J. Mrozek, jointly and severally, in the amount of $1,482,190.10, plus interest after June 1, 2010, at the rate of $271.68 per day, plus costs of suit.

STEVENS & LEE

By_____

Steven J. Adams, Esquire
Attorney I.D. No. 56293
111 N. Sixth Street
P.O. Box 679
Reading, PA  19603-0679
Telephone:  (610) 478-2133
Facsimile:  (610) 988-0841
Email:  sja@stevenslee.com

Attorney for Plaintiff
Nova Bank, successor by merger to
Pennsylvania Business Bank

5

## VERIFICATION

I, Michael Cosden, verify that I am a Vice President – Special Assets Manager of

Nova Bank, plaintiff in the within action; that I am authorized to make this Verification on

behalf of the plaintiff; and that the facts set forth in the foregoing complaint are true and correct

to the best of my knowledge, information and belief.  I understand that the statements made

herein are subject to the penalties of 18 Pa. C. S. Section 4904 relating to unsworn falsification to

authorities.

Michael Cosden
Vice President – Special Assets Manager
Nova Bank, successor by merger to
Pennsylvania Business Bank

| | |
|---|---|
| NOVA BANK, successor by merger to<br>Pennsylvania Business Bank, | : IN THE COURT OF COMMON PLEAS OF BUCKS<br>: COUNTY, PENNSYLVANIA<br>: CIVIL ACTION - LAW |
| Plaintiff | : |
| | : |
| vs. | : |
| | : No. |
| CAROLE A. MROZEK and KENNETH J.<br>MROZEK, | : |
| | : |
| Defendants | : |

### AFFIDAVIT OF DEFAULT

STATE OF NEW JERSEY                  :
                                     :ss.
COUNTY OF GLOUCESTER                 :

        Michael Cosden, being duly sworn according to law, deposes and says that he is a

Vice President – Special Assets Manager of NOVA Bank, successor by merger to Pennsylvania

Business Bank, plaintiff in the above action; that defendants Carole A. Mrozek and Kenneth J.

Mrozek executed the Commercial Guaranties dated May 17, 2005, true and correct copies of

which are attached to the Complaint as Exhibit "B," and that defaults exist under the Commercial

Guaranties.

        Deponent also avers that there is $1,482,190.10 due and owing under the

Commercial Guaranties as June 1, 2010, plus additional interest after June 1, 2010 at the rate of

$271.68 per day.

                                 Michael Cosden
                                 Vice President – Special Assets Manager
                                 Nova Bank, successor by merger to
                                 Pennsylvania Business Bank

Sworn to and subscribed before me this 10ᵗʰ day of June, 2010.

                                                              BARBARA A. GIBBS
Notary Public                                             NOTARY PUBLIC
                                                      STATE OF NEW JERSEY
                                                  MY COMMISSION EXPIRES JAN. 12, 2015

| | |
|---|---|
| NOVA BANK, successor by merger to Pennsylvania Business Bank, | : IN THE COURT OF COMMON PLEAS OF BUCKS<br>: COUNTY, PENNSYLVANIA<br>: CIVIL ACTION - LAW |
| Plaintiff | : |
| | : |
| vs. | : |
| | : No. |
| CAROLE A. MROZEK and KENNETH J. MROZEK, | : |
| | : |
| Defendants | : |

## AFFIDAVIT OF BUSINESS TRANSACTION

STATE OF NEW JERSEY                    :
                                       :ss.
COUNTY OF GLOUCESTER                   :

      Michael Cosden, being duly sworn according to law, deposes and says that he is a Vice President -- Special Assets Manager of NOVA Bank, successor by merger to Pennsylvania Business Bank, Plaintiff herein; that attached as Exhibit "B" to the Complaint filed in this action are a true and correct copies of the Commercial Guaranties given by defendants Carole A. Mrozek and Kenneth J. Mrozek to Plaintiff (the "Guaranties"); that the Guaranties that contain the warrants of attorney upon which judgment is being confessed were given to the Plaintiff in connection with a business transaction; and that judgment is not being confessed against natural persons in connection with a consumer credit transaction.

                                        _____

                                         Michael Cosden
                                         Vice President – Special Assets Manager
                                         Nova Bank, successor by merger to
                                         Pennsylvania Business Bank

Sworn to and subscribed before me this _10_ day of June, 2010.

_____
Notary Public

BARBARA A. GIBBS
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES JAN. 12, 2015

SL1 1003862v1/103369.00020

| | |
|---|---|
| NOVA BANK, successor by merger to Pennsylvania Business Bank, | : IN THE COURT OF COMMON PLEAS OF |
| | : BUCKS COUNTY, PENNSYLVANIA |
| | : CIVIL ACTION - LAW |
| Plaintiff | : |
| | : |
| vs. | : |
| | : No. |
| CAROLE A. MROZEK and KENNETH J. MROZEK, | : |
| | : |
| | : |
| Defendants | : |

## AFFIDAVIT OF NON-MILITARY SERVICE

STATE OF NEW JERSEY        :

       :ss.

COUNTY OF GLOUCESTER      :

         Michael Cosden, being duly sworn according to law, deposes and says that he a

Vice President – Special Assets Manager of NOVA Bank, the plaintiff, and that to the best of his

knowledge, information and belief, defendants Carole A. Mrozek and Kenneth J. Mrozek are not

in the military service based on the last known address of the defendants, which is:

         Carole A. Mrozek
         Kenneth J. Mrozek
         2219 Langhorne-Yardley Road
         Langhorne, PA 19047-8244

         _____
         Michael Cosden

Sworn to and subscribed before me this 10th day of June, 2010.

_____
Notary Public



BARBARA A. GIBBS
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES JAN. 12, 2015

SL1 1003862v1/103369.00020

| | |
|---|---|
| NOVA BANK, successor by merger to<br>Pennsylvania Business Bank, | : IN THE COURT OF COMMON PLEAS OF BUCKS<br>: COUNTY, PENNSYLVANIA<br>: CIVIL ACTION - LAW |
| Plaintiff | : |
| vs. | : |
| | : No. |
| CAROLE A. MROZEK and KENNETH J.<br>MROZEK, | : |
| Defendants | : |

## AFFIDAVIT OF ADDRESSES AND CONJUGAL INCOME

STATE OF NEW JERSEY       :
                        :ss.

COUNTY OF GLOUCESTER     :

       Michael Cosden, being duly sworn according to law, deposes and says that he is a

Vice President – Special Assets Manager of NOVA Bank, successor by merger to Pennsylvania

Business Bank, Plaintiff herein and that the facts set forth in the foregoing Complaint are true

and correct to the best of his knowledge, information and belief; and that the income of the

Defendants is in excess of $10,000 per year.

       Affiant also certifies that the last known address of defendants Carole A. Mrozek

and Kenneth J. Mrozek is 2219 Langhorne-Yardley Road, Langhorne, Pennsylvania 19047-8244.

                        Michael Cosden
                        Vice President – Special Assets Manager
                        Nova Bank, successor by merger to
                        Pennsylvania Business Bank

Sworn to and subscribed before me this _10th_ day of June, 2010.

                        Notary Public

BARBARA A. GIBBS
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES JAN. 12, 2015

NOVA BANK, successor by merger to            :   IN THE COURT OF COMMON PLEAS OF
Pennsylvania Business Bank,                 :   BUCKS COUNTY, PENNSYLVANIA
                                            :   CIVIL ACTION - LAW
               Plaintiff    :
                                            :
      vs.                     :
                                            :   No.
CAROLE A. MROZEK and KENNETH J.             :
MROZEK,                                     :
                                            :
              Defendants    :


## CERTIFICATE OF ADDRESSES

The undersigned certifies as follows:

1.  The plaintiff's address is:

        NOVA Bank
        Suite 420
        1235 Westlakes Drive
        Berwyn, PA 19312

2.  The last known address of Defendants Carole A. Mrozek and Kenneth J.

Mrozek is:

        Carole A. Mrozek
        Kenneth J. Mrozek
        2219 Langhorne-Yardley Road
        Langhorne, PA 19047-8244

DATED:  June ___, 2010

                          Steven J. Adams

Exhibit "A"

*Pennsylvania
Business Bank*

Ln#100146844

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 05-17-2005 | 11-17-2011 | | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Suzuki Fun Center, Inc. (TIN: 23-1909037)
2639 Bristol Pike
Bensalem, PA 19020

**Lender:** Pennsylvania Business Bank
1401 Walnut Street, Suite 400
Philadelphia, PA 19102
(215) 564-2665

| Principal Amount: $1,000,000.00 | Interest Rate: 6.750% | Date of Note: May 17, 2005 |
|---|---|---|

**PROMISE TO PAY.** Suzuki Fun Center, Inc ("Borrower") promises to pay to Pennsylvania Business Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million & 00/100 Dollars ($1,000,000.00) or so much as may be outstanding, together with interest at the rate of 6.750% per annum on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule:

Payments of interest only shall be made on a monthly basis beginning on June 17, 2005 or the 17th day of the first month following the initial advance, whichever comes sooner, and continuing on the 17th day of each month thereafter; then 69 consecutive monthly payments of principal and interest of $7,662.31 shall be made, beginning on June 17, 2006 and continuing on the 17th day of each month thereafter; and then one payment on May 17, 2011 (the "Maturity Date"), in a sum sufficient to satisfy the entire outstanding balance of principal, accrued and unpaid interest, and charges and fees, if any.

Unless otherwise agreed or required by applicable law, payments will be applied first to any late charges; then to any unpaid collection costs; then to any accrued unpaid interest; and then to principal. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT PENALTY.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: Five (5.000%) of the amount prepaid during months one through 12; four (4.000%) percent of the amount prepaid during months 13 through 24; three (3.000%) percent of the amount prepaid through months 25 through 36; two (2.000%) percent of the amount prepaid through months 37 through 48; and one (1.000%) percent of the amount prepaid through months 49 through 60. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Pennsylvania Business Bank, 1401 Walnut Street, Suite 400, Philadelphia, PA 19102.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 10.000% of the unpaid portion of the regularly scheduled payment or $20.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note 5.000 percentage points. The interest rate will not exceed the maximum rate permitted by applicable law. If judgment is entered in connection with this Note, interest will continue to accrue on this Note after judgment at the existing interest rate provided for in this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the

creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within five (5) days; or (2) if the cure requires more than five (5) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may, after giving such notices as required by applicable law, declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**EXPENSES.** If Lender institutes any suit or action to enforce any of the terms of this Note, Lender shall be entitled to recover such sum as the court may adjudge reasonable. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the loan payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals, to the extent permitted by applicable law. Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Pennsylvania.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Philadelphia County, Commonwealth of Pennsylvania.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $50.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

    (A) a Mortgage dated May 17, 2005, to Lender on real property located in Bucks County, Commonwealth of Pennsylvania.

    (B) an Assignment of All Rents to Lender on real property located in Bucks County, Commonwealth of Pennsylvania.

    (C) collateral described in a Commercial Security Agreement dated May 17, 2005.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note may be requested only in writing by Borrower or as provided in this paragraph. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following persons currently are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of their authority: Kenneth J. Mrozek, President of Suzuki Fun Center, Inc.; and Carole A. Mrozek, Treasurer of Suzuki Fun Center, Inc. Advances shall be made on a monthly basis after inspection by an independent engineer engaged by Lender of the work completed, the cost of which shall be borne by Borrower, indicating that the Project has reached a level of completion appropriate for the advance requested, together with the submission of invoices, bills, cancelled checks, and such other documentation as Lender may deem appropriate. The request for an advance shall be in writing in a format specified by Lender which shall indicate the amount of the advance requested and the aggregate balance of the Loan, and certify that the Project has reached a stage of completion appropriate for the advance. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on the Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**WARRANT OF ATTORNEY TO CONFESS JUDGMENT. BORROWER IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ANY CLERK OF ANY COURT OF RECORD, WITH OR WITHOUT THE OCCURRENCE OF AN EVENT OF DEFAULT, TO APPEAR FOR AND CONFESS JUDGMENT AGAINST BORROWER FOR SUCH SUMS AS ARE DUE AND/OR MAY BECOME DUE ON ANY OF THE INDEBTEDNESS, WITH OR WITHOUT DECLARATION, WITH COSTS OF SUIT, WITHOUT STAY OF EXECUTION AND WITH AN AMOUNT, FOR LIEN PRIORITY PURPOSES, EQUAL TO FIFTEEN PERCENT (15.000%) OF THE AMOUNT OF SUCH JUDGMENT, BUT NOT LESS THAN ONE THOUSAND DOLLARS ($1,000.00), ADDED FOR ATTORNEYS' COLLECTION FEES, WITH THE ACTUAL AMOUNT OF ATTORNEYS' AND COSTS TO BE DETERMINED IN ACCORDANCE WITH THE SECTION OF THIS NOTE ENTITLED "PAYMENT OF COSTS AND ATTORNEY'S FEES." TO THE EXTENT PERMITTED BY LAW, BORROWER: (1) WAIVES THE RIGHT OF INQUISITION ON ANY REAL ESTATE LEVIED ON, VOLUNTARILY CONDEMNS THE SAME, AUTHORIZES THE PROTHONOTARY OR CLERK TO ENTER UPON THE WRIT OF EXECUTION THIS VOLUNTARY CONDEMNATION AND AGREES**

THAT ANY REAL ESTATE MAY BE SOLD ON A WRIT OF EXECUTION; (2) WAIVES AND RELEASES ALL RELIEF FROM ALL APPRAISEMENT, STAY, EXEMPTION OR APPEAL LAWS OF ANY STATE NOW IN FORCE OR HEREAFTER ENACTED; AND (3) RELEASES ALL ERRORS IN SUCH PROCEEDINGS. IF A COPY OF THIS NOTE, VERIFIED BY AFFIDAVIT BY OR ON BEHALF OF LENDER SHALL HAVE BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL NOTE AS A WARRANT OF ATTORNEY. THE AUTHORITY AND POWER TO APPEAR FOR AND CONFESS JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY THE INITIAL EXERCISE THEREOF AND MAY BE EXERCISED AS OFTEN AS LENDER SHALL FIND IT NECESSARY AND DESIRABLE AND THIS NOTE SHALL BE A SUFFICIENT WARRANT THEREFORE. LENDER MAY CONFESS ONE OR MORE JUDGMENTS IN THE SAME OR DIFFERENT JURISDICTIONS FOR ALL OR ANY PART OF THE INDEBTEDNESS, WITHOUT REGARD TO WHETHER JUDGMENT HAS THERETOFORE BEEN CONFESSED ON MORE THAN ONE OCCASION FOR THE SAME INDEBTEDNESS. IN THE EVENT ANY JUDGMENT CONFESSED AGAINST BORROWER HEREUNDER IS STRICKEN OR OPENED UPON APPLICATION BY OR ON BORROWER'S BEHALF FOR ANY REASON, LENDER IS HEREBY AUTHORIZED AND EMPOWERED TO AGAIN APPEAR FOR AND CONFESS JUDGMENT AGAINST BORROWER FOR ANY PART OR ALL OF THE INDEBTEDNESS, AS PROVIDED FOR HEREIN, IF DO SO WILL CURE ANY ERRORS OR DEFECTS IN SUCH PRIOR PROCEEDINGS.

INTEREST RATE INCREASE FOR FAILURE TO PROVIDE FINANCIAL INFORMATION. The Borrower, any Guarantor, and all co-signers and other persons, however designated, that are obligated, directly or indirectly, on the Loan or Indebtedness, must provide Financial Statements to the Lender as provided in the Business Loan Agreement, Promissory Note, or in any Commercial Guaranty or Related Documents, and such additional information as Lender may request from time to time (the "Financial Information"). If the required Financial Information is not received from each and every person obligated on the Loan or Indebtedness in a timely manner, Lender shall send a request for such Financial Information as it desires to the Borrower (the "Notice"). If the Financial Information requested is not received within ten (10) days of the date of the Notice: (i) the interest rate upon the Loan or Indebtedness shall increase by 2% per annum beginning on the 11th day after the date of the Notice and such increase in rate shall continue to apply until the first payment date of the first month after the Financial Information is provided; and (ii) the timely failure to comply with the Lender's request shall constitute an Event of Default. However, in appropriate circumstances as determined in the sole discretion of the Lender, such increase in rate may be rescinded or modified. The fact that the rate is increased shall not constitute a waiver by the Lender of the Event of Default and shall not prevent Lender from further increasing the rate of interest, as provided in the Note or Credit Agreement upon default.

CREDIT INFORMATION AND RELATED MATTERS. Borrower authorizes Lender to release information to others, such as credit bureaus, merchants, and other financial institutions, about the status and history of Borrower's loan. Borrower agrees that, upon Lender's request, Borrower will provide Lender with a current financial statement, a new credit application, or both, on forms provided or accepted by Lender. Borrower also agrees that Lender may obtain credit reports on Borrower at any time, at Lender's sole option and expense, for any reason, but not limited to determining whether there has been an adverse change in Borrower's financial condition.

CALCULATION OF INTEREST CHARGES. Any language herein to the contrary notwithstanding, all interest charges will be calculated based on a year of three hundred and sixty (360) days. Interest (finance charges) calculated for portions of a year will be calculated on a formula using 365 as the numerator and 360 as the denominator (i.e., 365/360).

ADDENDUM. Under "LATE CHARGE," the reference to "ten (10.000%) percent" is deleted and replaced with "five (5.000%) percent".

SUCCESSOR INTERESTS.  The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

GENERAL PROVISIONS.  Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE.  BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

SUZUKI FUN CENTER, INC.

By:_____(Seal)      By:_____(Seal)
Kenneth J. Mrozek, President of Suzuki Fun Center,      Carole A. Mrozek, Treasurer of Suzuki Fun Center,
Inc.                                                     Inc.

ATTEST:

_____
Secretary or Assistant Secretary                         ( Corporate Seal )

Exhibit "B"

Pennsylvania Business Bank

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | 1001 46844 | | | *** | |
| References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations. | | | | | | | |

**Borrower:** Suzuki Fun Center, Inc. (TIN: 23-1909037)
2639 Bristol Pike
Bensalem, PA 19020

**Lender:** Pennsylvania Business Bank
1401 Walnut Street, Suite 400
Philadelphia, PA 19102
(215) 564-2665

**Guarantor:** Carole A. Mrozek (SSN: 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)
2219 Langhorne-Yardley Road
Langhorne, PA 19047-8244

AMOUNT OF GUARANTY. The amount of this Guaranty is Unlimited.

CONTINUING UNLIMITED GUARANTY. For good and valuable consideration, Carole A. Mrozek ("Guarantor") absolutely and unconditionally guarantees and promises to pay to Pennsylvania Business Bank ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of Suzuki Fun Center, Inc. ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

INDEBTEDNESS GUARANTEED. The Indebtedness guaranteed by this Guaranty includes any and all of Borrower's indebtedness to Lender and is used in the most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations and debts to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such Indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

DURATION OF GUARANTY. This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind Guarantor's estate as to Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to Guarantor's written revocation of this Guaranty shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed may from time to time be zero dollars ($0.00).

GUARANTOR'S AUTHORIZATION TO LENDER. Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

GUARANTOR'S REPRESENTATIONS AND WARRANTIES. Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which

may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

GUARANTOR'S FINANCIAL STATEMENTS. Guarantor agrees to furnish Lender with the following:

Annual Statements. As soon as available, but in no event later than sixty (60) days after the end of each fiscal year, Guarantor's balance sheet and income statement for the year ended, prepared by Guarantor.

Tax Returns. As soon as available, but in no event later than 10 days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns, prepared by a certified public accountant satisfactory to Lender.

Additional Requirements. Annual Financial Statements shall be prepared on forms provided by Lender. Notwithstanding anything to the contrary contained herein, GAAP standards shall not apply to such statements. Financial statements and copies of tax returns shall be signed by Guarantor. At the time copies of tax returns are provided, Guarantor shall provide proof that all taxes due have been paid.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

GUARANTOR'S WAIVERS. Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

In addition to the waivers set forth herein, if now or hereafter Borrower is or shall become insolvent and the Indebtedness shall not at all times until paid be fully secured by collateral pledged by Borrower, Guarantor hereby forever waives and gives up in favor of Lender and Borrower, and Lender's and Borrower's respective successors, any claim or right to payment Guarantor may now have or hereafter have or acquire against Borrower, by subrogation or otherwise, so that at no time shall Guarantor be or become a "creditor" of Borrower within the meaning of 11 U.S.C. section 547(b), or any successor provision of the Federal bankruptcy laws.

Guarantor also waives any and all rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced; there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS. Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR. Guarantor agrees that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Guaranty:

Amendments. This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Expenses. If Lender institutes any suit or action to enforce any of the terms of this Guaranty, Lender shall be entitled to recover such sum as the court may adjudge reasonable. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, to the extent permitted by applicable law. Guarantor also will pay any court costs, in addition to all other sums provided by law. .

Caption Headings. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the Commonwealth of Pennsylvania.

Choice of Venue. If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Philadelphia County, Commonwealth of Pennsylvania.

Integration. Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages; and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, ·representations and agreements of this paragraph.

Interpretation. In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, · partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

Notices. Unless otherwise provided by applicable law, any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.. Unless otherwise provided by applicable law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Successors and Assigns. The terms of this Guaranty shall be binding upon Guarantor, and upon Guarantor's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

Waive Jury. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either · Lender or Borrower against the other.

WARRANT OF ATTORNEY TO CONFESS JUDGMENT. GUARANTOR IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ANY CLERK OF ANY COURT OF RECORD, WITH OR WITHOUT THE OCCURRENCE OF AN EVENT OF DEFAULT, TO APPEAR FOR AND CONFESS JUDGMENT AGAINST GUARANTOR FOR SUCH SUMS AS ARE DUE AND/OR MAY BECOME DUE ON ANY OF THE INDEBTEDNESS, WITH OR WITHOUT DECLARATION, WITH COSTS OF SUIT, WITHOUT STAY OF EXECUTION AND WITH·AN AMOUNT, FOR LIEN PRIORITY PURPOSES, EQUAL TO FIFTEEN PERCENT (15.000%) OF THE AMOUNT OF SUCH JUDGMENT, BUT NOT LESS THAN ONE THOUSAND DOLLARS ($1,000.00), ADDED FOR ATTORNEYS' COLLECTION FEES, WITH THE ACTUAL AMOUNT OF ATTORNEYS' AND COSTS TO BE DETERMINED IN ACCORDANCE WITH THE SECTION OF THIS GUARANTY ENTITLED "PAYMENT OF COSTS AND ATTORNEY'S FEES." TO THE EXTENT PERMITTED BY LAW, GUARANTOR: (1) WAIVES THE RIGHT OF INQUISITION ON ANY REAL ESTATE LEVIED ON, VOLUNTARILY CONDEMNS THE SAME, AUTHORIZES THE PROTHONOTARY OR CLERK TO ENTER UPON THE WRIT OF EXECUTION THIS VOLUNTARY CONDEMNATION AND AGREES THAT ANY REAL ESTATE MAY BE SOLD ON A WRIT OF EXECUTION; (2) WAIVES AND RELEASES ALL RELIEF FROM ALL APPRAISEMENT, STAY, EXEMPTION OR APPEAL LAWS OF ANY STATE NOW IN FORCE OR HEREAFTER ENACTED; AND (3) RELEASES ALL ERRORS IN SUCH PROCEEDINGS. IF A COPY OF THIS GUARANTY, VERIFIED BY AFFIDAVIT BY OR ON BEHALF OF LENDER SHALL HAVE BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL GUARANTY AS A WARRANT OF ATTORNEY. THE AUTHORITY AND POWER TO APPEAR FOR AND CONFESS JUDGMENT AGAINST GUARANTOR SHALL NOT BE EXHAUSTED BY THE INITIAL EXERCISE THEREOF AND MAY BE EXERCISED AS OFTEN AS LENDER SHALL FIND IT NECESSARY AND DESIRABLE AND THIS GUARANTY SHALL BE A SUFFICIENT WARRANT THEREFORE. LENDER MAY CONFESS ONE OR MORE JUDGMENTS IN THE SAME OR DIFFERENT JURISDICTIONS FOR ALL OR ANY PART OF·THE INDEBTEDNESS, WITHOUT REGARD TO WHETHER JUDGMENT HAS THERETOFORE BEEN CONFESSED ON MORE THAN ONE OCCASION FOR THE SAME INDEBTEDNESS. IN THE EVENT ANY JUDGMENT CONFESSED AGAINST GUARANTOR HEREUNDER IS STRICKEN OR OPENED UPON APPLICATION BY OR·ON GUARANTOR'S BEHALF FOR ANY REASON, LENDER IS HEREBY AUTHORIZED AND EMPOWERED TO AGAIN APPEAR FOR AND CONFESS JUDGMENT AGAINST GUARANTOR FOR ANY PART OR ALL OF THE INDEBTEDNESS, AS PROVIDED FOR HEREIN, IF DO SO WILL CURE ANY ERRORS OR DEFECTS IN SUCH PRIOR PROCEEDINGS.

PAYMENT OF COSTS AND ATTORNEY'S FEES. Guarantor shall·be liable, and shall reimburse Lender on demand, for all attorneys' fees, costs and expenses incurred by Lender in the event that Lender engages·an attorney to represent it in connection with (1) any alleged default by any Borrower, Guarantor, or Grantor under the Note and Related Documents issued in connection with·or arising out of any of the·Indebtedness or any other

obligation between any Borrower, Guarantor, or Grantor; (2) the enforcement of any of the Lender's rights and remedies under the Note and Related Documents or any agreement or document evidencing any obligation of any Borrower, Guarantor, or Grantor; (3) any potential and/or actual bankruptcy or other insolvency proceedings commenced by or against any Borrower, Guarantor, or Grantor; and/or (4) any potential and/or actual litigation arising out of or related to any of the foregoing, the Note and Related Documents, the Indebtedness or any other obligation of any Borrower, Guarantor, or Grantor to Lender. Guarantor shall also be liable and shall reimburse Lender on demand for all other costs and expenses (including without limitation attorney's fees) incurred by Lender in connection with the collection, preservation and/or liquidation of any collateral security for any of the Indebtedness and/or in the enforcement of the obligations of any Borrower, Guarantor, or Grantor under the Note or Related Documents or any other agreement or document.

SURETY. In addition to all other obligations and liabilities under this Commercial Guaranty, Guarantor shall also become an unconditional surety to Lender, its successors, endorsees, and assigns for the prompt payment when due of all existing and future liabilities and obligations of Borrower to Lender, whether matured or unmatured, absolute or contingent, direct or indirect, joint or several, of any nature whatsoever, and out of whatever transactions arising, including without limitation, any debt, liability, or obligation owing from Borrower to others which Lender may obtain by assignment or otherwise, continuing interest thereon and any costs and legal fees and expenses incurred by Lender in the enforcement thereof, excepting only any indebtedness constituting "Consumer Credit," as that term is defined in Regulation Z 12 CFR sec. 226 et seq.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

Borrower. The word "Borrower" means Suzuki Fun Center, Inc. and includes all co-signers and co-makers signing the Note.

GAAP. The word "GAAP" means generally accepted accounting principles.

Guarantor. The word "Guarantor" means each and every person or entity signing this Guaranty, including without limitation Carole A. Mrozek.

Guaranty. The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

Indebtedness. The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

Lender. The word "Lender" means Pennsylvania Business Bank, its successors and assigns.

Note. The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MAY 17, 2005.

THIS GUARANTY IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS GUARANTY IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GUARANTOR:

X _____ (Seal)
   Carole A. Mrozek
Signed, acknowledged and delivered in the presence of:

X _____
   Witness

X _____
   Witness



## *Pennsylvania Business Bank*
## COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call/Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-----------|---------|---------|----------|
| | | | | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** Suzuki Fun Center, Inc. (TIN: 23-1909037)
2639 Bristol Pike
Bensalem, PA 19020

**Lender:** Pennsylvania Business Bank
1401 Walnut Street, Suite 400
Philadelphia, PA 19102
(215) 564-2665

**Guarantor:** Kenneth J. Mrozek (SSN: 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)
2219 Langhorne-Yardley Road
Langhorne, PA 19047-8244

AMOUNT OF GUARANTY. The amount of this Guaranty is Unlimited.

CONTINUING UNLIMITED GUARANTY. For good and valuable consideration, Kenneth J. Mrozek ("Guarantor") absolutely and unconditionally guarantees and promises to pay to Pennsylvania Business Bank ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of Suzuki Fun Center, Inc. ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

INDEBTEDNESS GUARANTEED. The Indebtedness guaranteed by this Guaranty includes any and all of Borrower's indebtedness to Lender and is used in the most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations and debts to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such Indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

DURATION OF GUARANTY. This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind Guarantor's estate as to Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to Guarantor's written revocation of this Guaranty shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed may from time to time be zero dollars ($0.00).

GUARANTOR'S AUTHORIZATION TO LENDER. Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and to exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

GUARANTOR'S REPRESENTATIONS AND WARRANTIES. Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which

may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

GUARANTOR'S FINANCIAL STATEMENTS.  Guarantor agrees to furnish Lender with the following:

Annual Statements.  As soon as available, but in no event later than sixty (60) days after the end of each fiscal year, Guarantor's balance sheet and income statement for the year ended, prepared by Guarantor.

Tax Returns.  As soon as available, but in no event later than 10 days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns, prepared by a certified public accountant satisfactory to Lender.

Additional Requirements.  Annual Financial Statements shall be prepared on forms provided by Lender. Notwithstanding anything to the contrary contained herein, GAAP standards shall not apply to such statements. Financial statements and copies of tax returns shall be signed by Guarantor. At the time copies of tax returns are provided, Guarantor shall provide proof that all taxes due have been paid.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

GUARANTOR'S WAIVERS.  Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

In addition to the waivers set forth herein, if now or hereafter Borrower is or shall become insolvent and the Indebtedness shall not at all times until paid be fully secured by collateral pledged by Borrower, Guarantor hereby forever waives and agrees to forgo in favor of Lender and Borrower, and Lender's and Borrower's respective successors, any claim or right to payment Guarantor may now have or hereafter have or acquire against Borrower, by subrogation or otherwise, so that at no time shall Guarantor be or become a "creditor" of Borrower within the meaning of 11 U.S.C. section 547(b), or any successor provision of the Federal bankruptcy laws.

Guarantor also waives any and all rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.  Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

RIGHT OF SETOFF.  To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.  Guarantor agrees that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent.  Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

MISCELLANEOUS PROVISIONS.  The following miscellaneous provisions are a part of this Guaranty:

Amendments.  This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Guaranty, Lender shall be entitled to recover such sum as the court may adjudge reasonable. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, to the extent permitted by applicable law. Guarantor also will pay any court costs, in addition to all other sums provided by law.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the Commonwealth of Pennsylvania.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Philadelphia County, Commonwealth of Pennsylvania.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided by applicable law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** The terms of this Guaranty shall be binding upon Guarantor, and upon Guarantor's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**WARRANT OF ATTORNEY TO CONFESS JUDGMENT.** GUARANTOR IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ANY CLERK OF ANY COURT OF RECORD, WITH OR WITHOUT THE OCCURRENCE OF AN EVENT OF DEFAULT, TO APPEAR FOR AND CONFESS JUDGMENT AGAINST GUARANTOR FOR SUCH SUMS AS ARE DUE AND/OR MAY BECOME DUE ON ANY OF THE INDEBTEDNESS, WITH OR WITHOUT DECLARATION, WITH COSTS OF SUIT, WITHOUT STAY OF EXECUTION AND WITH AN AMOUNT, FOR LIEN PRIORITY PURPOSES, EQUAL TO FIFTEEN PERCENT (15.000%) OF THE AMOUNT OF SUCH JUDGMENT, BUT NOT LESS THAN ONE THOUSAND DOLLARS ($1,000.00), ADDED FOR ATTORNEYS' COLLECTION FEES, WITH THE ACTUAL AMOUNT OF ATTORNEYS' AND COSTS TO BE DETERMINED IN ACCORDANCE WITH THE SECTION OF THIS GUARANTY ENTITLED "PAYMENT OF COSTS AND ATTORNEY'S FEES." TO THE EXTENT PERMITTED BY LAW, GUARANTOR: (1) WAIVES THE RIGHT OF INQUISITION ON ANY REAL ESTATE LEVIED ON, VOLUNTARILY CONDEMNS THE SAME, AUTHORIZES THE PROTHONOTARY OR CLERK TO ENTER UPON THE WRIT OF EXECUTION THIS VOLUNTARY CONDEMNATION AND AGREES THAT ANY REAL ESTATE MAY BE SOLD ON A WRIT OF EXECUTION; (2) WAIVES AND RELEASES ALL RELIEF FROM ALL APPRAISEMENT, STAY, EXEMPTION OR APPEAL LAWS OF ANY STATE NOW IN FORCE OR HEREAFTER ENACTED; AND (3) RELEASES ALL ERRORS IN SUCH PROCEEDINGS. IF A COPY OF THIS GUARANTY, VERIFIED BY AFFIDAVIT BY OR ON BEHALF OF LENDER SHALL HAVE BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL GUARANTY AS A WARRANT OF ATTORNEY. THE AUTHORITY AND POWER TO APPEAR FOR AND CONFESS JUDGMENT AGAINST GUARANTOR SHALL NOT BE EXHAUSTED BY THE INITIAL EXERCISE THEREOF AND MAY BE EXERCISED AS OFTEN AS LENDER SHALL FIND IT NECESSARY AND DESIRABLE AND THIS GUARANTY SHALL BE A SUFFICIENT WARRANT THEREFORE. LENDER MAY CONFESS ONE OR MORE JUDGMENTS IN THE SAME OR DIFFERENT JURISDICTIONS FOR ALL OR ANY PART OF THE INDEBTEDNESS, WITHOUT REGARD TO WHETHER JUDGMENT HAS THERETOFORE BEEN CONFESSED ON MORE THAN ONE OCCASION FOR THE SAME INDEBTEDNESS. IN THE EVENT ANY JUDGMENT CONFESSED AGAINST GUARANTOR HEREUNDER IS STRICKEN OR OPENED UPON APPLICATION BY OR ON GUARANTOR'S BEHALF FOR ANY REASON, LENDER IS HEREBY AUTHORIZED AND EMPOWERED TO AGAIN APPEAR FOR AND CONFESS JUDGMENT AGAINST GUARANTOR FOR ANY PART OR ALL OF THE INDEBTEDNESS, AS PROVIDED FOR HEREIN, IF DO SO WILL CURE ANY ERRORS OR DEFECTS IN SUCH PRIOR PROCEEDINGS.

**PAYMENT OF COSTS AND ATTORNEY'S FEES.** Guarantor shall be liable, and shall reimburse Lender on demand, for all attorneys' fees, costs and expenses incurred by Lender in the event that Lender engages an attorney to represent it in connection with (1) any alleged default by any Borrower, Guarantor, or Grantor under the Note and Related Documents issued in connection with or arising out of any of the Indebtedness or any other

obligation between any Borrower, Guarantor, or Grantor; (2) the enforcement of any of the Lender's rights and remedies under the Note and Related Documents or any agreement or document evidencing any obligation of any Borrower, Guarantor, or Grantor; (3) any potential and/or actual bankruptcy or other insolvency proceedings commenced by or against any Borrower, Guarantor, or Grantor; and/or (4) any potential and/or actual litigation arising out of or related to any of the foregoing, the Note and Related Documents, the Indebtedness or any other obligation of any Borrower, Guarantor, or Grantor to Lender. Guarantor shall also be liable and shall reimburse Lender on demand for all other costs and expenses (including without limitation attorney's fees) incurred by Lender in connection with the collection, preservation and/or liquidation of any collateral security for any of the Indebtedness and/or in the enforcement of the obligations of any Borrower, Guarantor, or Grantor under the Note or Related Documents or any other agreement or document.

SURETY. In addition to all other obligations and liabilities under this Commercial Guaranty, Guarantor shall also become an unconditional surety to Lender, its successors, endorsees, and assigns for the prompt payment when due of all existing and future liabilities and obligations of Borrower to Lender, whether matured or unmatured, absolute or contingent, direct or indirect, joint or several, of any nature whatsoever, and out of whatever transactions arising, including without limitation, any debt, liability, or obligation owing from Borrower to others which Lender may obtain by assignment or otherwise, continuing interest thereon and any costs and legal fees and expenses incurred by Lender in the enforcement thereof, excepting only any indebtedness constituting "Consumer Credit," as that term is defined in Regulation Z 12 CFR sec. 226 et seq.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

Borrower. The word "Borrower" means Suzuki Fun Center, Inc. and includes all co-signers and co-makers signing the Note.

GAAP. The word "GAAP" means generally accepted accounting principles.

Guarantor. The word "Guarantor" means each and every person or entity signing this Guaranty, including without limitation Kenneth J. Mrozek.

Guaranty. The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

Indebtedness. The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

Lender. The word "Lender" means Pennsylvania Business Bank, its successors and assigns.

Note. The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments; agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MAY 17, 2005.

THIS GUARANTY IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS GUARANTY IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GUARANTOR:

X_____(Seal)
  Kenneth J. Mrozek
Signed, acknowledged and delivered in the presence of:

X_____
  Witness

X_____
  Witness





# NOTICE AND WAIVER OF RIGHTS

### REGARDING WARRANT OF ATTORNEY TO CONFESS JUDGMENT EXECUTION RIGHTS, AND   WAIVER OF RIGHTS TO PRIOR NOTICE AND JUDICIAL HEARING

Borrower:                       Suzuki Fun Center, Inc.

Sureties:                       Kenneth J. Mrozek
                                Carole A. Mrozek

Transaction:                    $1,000,000.00 Commercial Construction Mortgage Loan

Date:                           May 23, 2005

---

This NOTICE AND WAIVER of rights is made by you (that is, each person signing below) and given to PENNSYLVANIA BUSINESS BANK (the "Lender") in connection with the above-described credit transaction. IT IS IMPORTANT THAT YOU CAREFULLY READ AND UNDERSTAND THIS DOCUMENT. WHEN YOU SIGN YOUR NAME IN THE SPACE PROVIDED BELOW YOU ARE ACKNOWLEDGING AND REPRESENTING TO THE LENDER THAT YOU HAVE READ AND UNDERSTAND THE CONTENTS OF THIS DOCUMENT. DO NOT SIGN THIS DOCUMENT UNLESS YOU HAVE READ AND UNDERSTAND ITS CONTENTS.

You will be executing and delivering to the Lender a **Promissory Note, Commercial Guaranty, or Mortgage** (the "Debt Instrument") which grants to the Lender, among other things, the power and authority to enter **JUDGMENT BY CONFESSION** against you, and to exercise rights of execution, levy, garnishment, seizure of your property and the like.  Other than notices, if any, required under the Debt Instrument, these rights and powers may be exercised by the Lender without giving you any prior notice of its intention to do so.  In addition, these

3

powers and rights may be exercised without a hearing except as otherwise required by law.

By executing and delivering this Notice and Waiver, you knowingly, voluntarily, and intelligently waive your rights to prior notice and a hearing or other judicial proceedings to determine your rights and liabilities in connection with the Debt Instrument. By signing this Notice and Waiver, you acknowledge that you understand the Lender may obtain a judgment against you, and execute upon and seize forthwith your property and assets without the opportunity to raise any defense, set-off, counterclaim, or other claim that you may have. Each of you knowingly, voluntarily, and intelligently waive your rights to any prior notice or judicial determination as a material part of the consideration for this transaction and in order to induce the Lender to enter into this transaction. You acknowledge and represent that you have consulted (or have had an opportunity to consult) with legal counsel of your choice, and with such other experts and advisors as you deemed necessary, in connection with the execution and delivery of the Debt Instrument (including without limitation the provisions of the Debt Instrument authorizing the confession of judgment and the execution upon and seizure of your property and assets without the opportunity for prior notice or judicial determination of any nature).

IN WITNESS WHEREOF, and intending to be legally bound, the undersigned has executed this Notice and Waiver as of the day, month and year set forth above.

## DO NOT SIGN THIS DOCUMENT UNLESS YOU HAVE READ

## AND UNDERSTAND ITS CONTENTS

SUZUKI FUN CENTER, INC.                          ATTEST:

By: _____                    _____
    Kenneth J. Mrozek,                                      [Seal]
    President

_David W. Barr  V.P_
Witness

_Kenneth J. Mrozek, Individually_

_David W. Barr  VP_
Witness

_Carole A. Mrozek_
Carole A. Mrozek, Individually

---

## LOAN OFFICER'S CERTIFICATION

I, the undersigned loan officer, hereby certify that the foregoing Waiver of Rights was signed in my presence by the persons whose names appear above, and that I instructed he/she/they to read this entire document before signing it and, having done so, observed he/she/they read this Waiver of Rights and answered any questions he/she/they had about its contents. I further certify that I pointed out the Warrant of Attorney to Confess Judgment contained in the Loan Documents and directed that they read the Warrant of Attorney to Confess Judgment, as well as the entirety of the Loan Documents, before he/she/they signed the Loan Documents.

_David Barr V.P_
[Loan Officer]

Exhibit "C"

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $1,300,000.00 | 10-13-2006 | 05-17-2011 | | | | *** | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Suzuki Fun Center, Inc. (TIN: 23-1909037);
Kenneth J. Mrozek (SSN: 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); and Carole
A. Mrozek (SSN: 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)
2639 Bristol Pike
Bensalem, PA 19020

**Lender:** Pennsylvania Business Bank
1819 John F. Kennedy Boulevard, Suite 210
Philadelphia, PA 19103
(215) 564-2665

---

**Principal Amount: $1,300,000.00**     **Interest Rate: 8.000%**     **Date of Agreement: October 13, 2006**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A $1,000,000.00 Commercial Construction Mortgage Loan (the "Loan") to Suzuki Fun Center, Inc., Kenneth J. Mrozek; and Carole A. Mrozek (the "Borrowers"), evidenced by a Promissory Note dated May 17, 2005, as modified by Change in Terms Agreements dated May 23, 2005 and July 10, 2006 (collectively, the "Note") and Related Documents, providing for 15 payments of interest only, beginning on June 17, 2005 and continuing on the 17th day of each month thereafter, then 56 payments of principal and interest of $7,662.51 each, beginning on September 17, 2006 and continuing on the 17th day of each month thereafter, and a 60th and final payment, due on May 17, 2011, in an amount equal to the entire outstanding balance of principal, accrued and unpaid interest, and charges and fees, if any, shall be made. Interest shall accrue on the unpaid principal at the fixed rate of 6.750 percent per annum.

**DESCRIPTION OF COLLATERAL.** A Mortgage and Assignment of Rents on all that land and premises in the Township of Bensalem, County of Bucks, and Commonwealth of Pennsylvania, commonly known as 2639 Bristol Pike (the "Real Property"), recorded on July 7, 2005 in the Office of the Recorder of Deeds of Bucks County in Record Book 4516, page 2256 etc.; and a security interest in all fixtures and other personal property pertaining to the Real Property.

**DESCRIPTION OF CHANGE IN TERMS.** 1. The Loan shall be increased to $1,300,000.00. 2. The rate of interest shall be increased to 8.000 percent per annum. 3. The Loan be paid in 18 payments of interest only, beginning on June 17, 2005 and continuing on the 17th day of each month thereafter, then 53 payments of principal and interest of $10,967.18 each, beginning on December 17, 2006 and continuing on the 17th day of each month thereafter, and a 54th and final payment, due on May 17, 2011, in an amount equal to the entire outstanding balance of principal, accrued and unpaid interest, and charges and fees, if any, shall be made.

**PROMISE TO PAY.** Suzuki Fun Center, Inc.; Kenneth J. Mrozek; and Carole A. Mrozek ("Borrower") jointly and severally promise to pay to Pennsylvania Business Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Three Hundred Thousand & 00/100 Dollars ($1,300,000.00) or so much as may be outstanding, together with interest at the rate of 8.000% per annum on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule:

18 payments of interest only shall be made on a monthly basis beginning on June 17, 2005 and continuing on the 17th day of each month thereafter; then 53 consecutive monthly payments of principal and interest of $10,967.18 shall be made, beginning on December 17, 2006 and continuing on the 17th day of each month thereafter; and then one payment on May 17, 2011 (the "Maturity Date"), in a sum sufficent to satisfy the entire outstanding balance of principal, accrued and unpaid interest, and charges and fees, if any.

Unless otherwise agreed or required by applicable law, payments will be applied first to any late charges; then to any unpaid collection costs; then to any accrued unpaid interest; and then to principal. Interest on this loan is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT PENALTY.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Upon prepayment of this Agreement, Lender is entitled to the following prepayment penalty: Five (5.000%) of the amount prepaid during months one through 12; five (5.000%) percent of the amount prepaid during months 13 through 24; four (4.000%) percent of the amount prepaid through months 25 through 36; three (3.000%) percent of the amount prepaid through months 37 through 48; two (2.000%) percent of the amount prepaid through months 49 through 60; and one (1.000%) percent of the amount prepaid during months 61 through 72. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Pennsylvania Business Bank, 1819 John F. Kennedy Boulevard, Suite 210, Philadelphia, PA 19103.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 10.000% of the unpaid portion of the regularly scheduled payment or $20.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased by 5.000 percentage points. If judgment is entered in connection with this Agreement, interest will continue to accrue after the date of judgment at the rate in effect at the time judgment is entered. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false

or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within five (5) days; or (2) if the cure requires more than five (5) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may, after giving such notices as required by applicable law, declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**EXPENSES.** If Lender institutes any suit or action to enforce any of the terms of this Agreement, Lender shall be entitled to recover such sum as the court may adjudge reasonable. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals, to the extent permitted by applicable law. Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the Commonwealth of Pennsylvania.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Philadelphia County, Commonwealth of Pennsylvania.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $50.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by a Mortgage and Assignment of Rents on all that land and premises in the Township of Bensalem, County of Bucks, and Commonwealth of Pennsylvania, commonly known as 2639 Bristol Pike (the "Real Property"); and a security interest in all fixtures and other personal property pertaining to the Real Property.

**LINE OF CREDIT.** This Agreement evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. The following persons currently are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of their authority: Kenneth J. Mrozek, President of Suzuki Fun Center, Inc.; and Carole A. Mrozek, Treasurer of Suzuki Fun Center, Inc. Advances shall be made on a monthly basis after inspection by an independant engineer engaged by Lender of the work completed, the cost of which shall be borne by Borrower, indicating that the Project has reached a level of completion appropriate for the advance requested, together with the submission of invoices, bills, canceled checks, and such other documentation as Lender may deem appropriate. The request for an advance shall be in writing in a format specified by Lender which shall indicate the amount of the advance requested and the aggregate balance of the Loan, and certify that the Project has reached a stage of completion appropriate for the advance. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons

signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**WARRANT OF ATTORNEY TO CONFESS JUDGMENT.** BORROWER IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ANY CLERK OF ANY COURT OF RECORD, WITH OR WITHOUT THE OCCURRENCE OF AN EVENT OF DEFAULT, TO APPEAR FOR AND CONFESS JUDGMENT AGAINST BORROWER FOR SUCH SUMS AS ARE DUE AND/OR MAY BECOME DUE ON ANY OF THE INDEBTEDNESS, WITH OR WITHOUT DECLARATION, WITH COSTS OF SUIT, WITHOUT STAY OF EXECUTION AND WITH AN AMOUNT, FOR LIEN PRIORITY PURPOSES, EQUAL TO FIFTEEN PERCENT (15.000%) OF THE AMOUNT OF SUCH JUDGMENT, BUT NOT LESS THAN ONE THOUSAND DOLLARS ($1,000.00), ADDED FOR ATTORNEYS' COLLECTION FEES, WITH THE ACTUAL AMOUNT OF ATTORNEYS' AND COSTS TO BE DETERMINED IN ACCORDANCE WITH THE SECTION OF THIS NOTE ENTITLED "PAYMENT OF COSTS AND ATTORNEY'S FEES." TO THE EXTENT PERMITTED BY LAW, BORROWER: (1) WAIVES THE RIGHT OF INQUISITION ON ANY REAL ESTATE LEVIED ON, VOLUNTARILY CONDEMNS THE SAME, AUTHORIZES THE PROTHONOTARY OR CLERK TO ENTER UPON THE WRIT OF EXECUTION THIS VOLUNTARY CONDEMNATION AND AGREES THAT ANY REAL ESTATE MAY BE SOLD ON A WRIT OF EXECUTION; (2) WAIVES AND RELEASES ALL RELIEF FROM ALL APPRAISEMENT, STAY, EXEMPTION OR APPEAL LAWS OF ANY STATE NOW IN FORCE OR HEREAFTER ENACTED; AND (3) RELEASES ALL ERRORS IN SUCH PROCEEDINGS. IF A COPY OF THIS NOTE, VERIFIED BY AFFIDAVIT BY OR ON BEHALF OF LENDER SHALL HAVE BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL NOTE AS A WARRANT OF ATTORNEY. THE AUTHORITY AND POWER TO APPEAR FOR AND CONFESS JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY THE INITIAL EXERCISE THEREOF AND MAY BE EXERCISED AS OFTEN AS LENDER SHALL FIND IT NECESSARY AND DESIRABLE AND THIS NOTE SHALL BE A SUFFICIENT WARRANT THEREFORE. LENDER MAY CONFESS ONE OR MORE JUDGMENTS IN THE SAME OR DIFFERENT JURISDICTIONS FOR ALL OR ANY PART OF THE INDEBTEDNESS, WITHOUT REGARD TO WHETHER JUDGMENT HAS THERETOFORE BEEN CONFESSED ON MORE THAN ONE OCCASION FOR THE SAME INDEBTEDNESS. IN THE EVENT ANY JUDGMENT CONFESSED AGAINST BORROWER HEREUNDER IS STRICKEN OR OPENED UPON APPLICATION BY OR ON BORROWER'S BEHALF FOR ANY REASON, LENDER IS HEREBY AUTHORIZED AND EMPOWERED TO AGAIN APPEAR FOR AND CONFESS JUDGMENT AGAINST BORROWER FOR ANY PART OR ALL OF THE INDEBTEDNESS, AS PROVIDED FOR HEREIN, IF DO SO WILL CURE ANY ERRORS OR DEFECTS IN SUCH PRIOR PROCEEDINGS.

**CALCULATION OF INTEREST CHARGES.** Any language herein to the contrary notwithstanding, all interest charges will be calculated based on a year of three hundred and sixty (360) days. Interest (finance charges) calculated for portions of a year will be calculated on a formula using 365 as the numerator and 360 as the denominator (i.e., 365/360).

**INTEREST RATE INCREASE FOR FAILURE TO PROVIDE FINANCIAL INFORMATION.** The Borrower, any Guarantor, and all co-signers and other persons, however designated, that are obligated, directly or indirectly, on the Loan or Indebtedness, must provide Financial Statements to the Lender as provided in the Business Loan Agreement, Promissory Note, or in any Commercial Guaranty or Related Documents, and such additional information as Lender may request from time to time (the "Financial Information"). If the required Financial Information is not received from each and every person obligated on the Loan or Indebtedness in a timely manner, Lender shall send a request for such Financial Information as it desires to the Borrower (the "Notice"). If the Financial Information requested is not received within ten (10) days of the date of the Notice: (i) the interest rate upon the Loan or Indebtedness shall increase by 2% per annum beginning on the 11th day after the date of the Notice and such increase in rate shall continue to apply until the first payment date of the first month after the Financial Information is provided; and (ii) the timely failure to comply with the Lender's request shall constitute an Event of Default. However, in appropriate circumstances as determined in the sole discretion of the Lender, such increase in rate may be rescinded or modified. The fact that the rate is increased shall not constitute a waiver by the Lender of the Event of Default and shall not prevent Lender from further increasing the rate of interest, as provided in the Note or Credit Agreement upon default.

**CREDIT INFORMATION AND RELATED MATTERS.** Borrower authorizes Lender to release information to others, such as credit bureaus, merchants, and other financial institutions, about the status and history of Borrower's loan. Borrower agrees that, upon Lender's request, Borrower will provide Lender with a current financial statement, a new credit application, or both, on forms provided or accepted by Lender. Borrower also agrees that Lender may obtain credit reports on Borrower at any time, at Lender's sole option and expense, for any reason, but not limited to determining whether there has been an adverse change in Borrower's fiancial condition.

**PAYMENT OF COSTS AND ATTORNEY'S FEES.** Borrower shall be liable, and shall reimburse Lender on demand, for all attorneys' fees, costs and expenses incurred by Lender in the event that Lender engages an attorney to represent it in connection with (1) any alleged default by any Borrower, Guarantor, or Grantor under the Note and Related Documents issued in connection with or arising out of any of the Indebtedness or any other obligation between any Borrower, Guarantor, or Grantor; (2) the enforcement of any of the Lender's rights and remedies under the Note and Related Documents or any agreement or document evidencing any obligation of any Borrower, Guarantor, or Grantor; (3) any potential and/or actual bankruptcy or other insolvency proceedings commenced by or against any Borrower, Guarantor, or Grantor; and/or (4) any potential and/or actual litigation arising out of or related to any of the foregoing, the Note and Related Documents, the Indebtedness or any other obligation of any Borrower, Guarantor, or Grantor to Lender. Borrower shall also be liable and shall reimburse Lender on demand for all other costs and expenses (including without limitation attorney's fees) incurred by Lender in connection with the collection, preservation and/or liquidation of any collateral security for any of the Indebtedness and/or in the enforcement of the obligations of any Borrower, Guarantor, or Grantor under the Note or Related Documents or any other agreement or document. This reimbursement obligation will not merge into, and will expressly survive, any judgment of foreclosure or judgment on the Note, Guaranty, or any Related Document.

**ADDENDUM.** Under "LATE CHARGE," the reference to "ten (10.000%) percent" is deleted and replaced with "five (5.000%) percent".

**SUCCESSOR INTERESTS.** The terms of this Agreement shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

SUZUKI FUN CENTER, INC.

By: _____(Seal)
    Kenneth J. Mrozek, President of Suzuki Fun Center,
    Inc.

By: _____(Seal)
    Carole A. Mrozek, Treasurer of Suzuki Fun Center,
    Inc.

X_____(Seal)
    Kenneth J. Mrozek, Individually

X_____(Seal)
    Carole A. Mrozek, Individually

ATTEST:

_____
Secretary or Assistant Secretary

( Corporate Seal )

LASER PRO Lending, Ver. 6.33.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2006.   All Rights Reserved.   - PA  L:\CFALP1\D20C.FC  TR-848  PR-CTL



# NOTICE AND WAIVER OF RIGHTS

### REGARDING WARRANT OF ATTORNEY TO CONFESS JUDGMENT EXECUTION RIGHTS; AND   WAIVER OF RIGHTS TO PRIOR NOTICE AND JUDICIAL HEARING

Borrowesr:            Suzuki Fun Center, Inc.
                      Kenneth J. Mrozek
                      Carole A. Mrozek

Transaction:          $1,300,000.00 Commercial Term Loan

Date:                 October 13, 2006

---

This NOTICE AND WAIVER of rights is made by you (that is, each person signing below) and given to PENNSYLVANIA BUSINESS BANK (the "Lender") in connection with the above-described credit transaction. IT IS IMPORTANT THAT YOU CAREFULLY READ AND UNDERSTAND THIS DOCUMENT. WHEN YOU SIGN YOUR NAME IN THE SPACE PROVIDED BELOW YOU ARE ACKNOWLEDGING AND REPRESENTING TO THE LENDER THAT YOU HAVE READ AND UNDERSTAND THE CONTENTS OF THIS DOCUMENT. DO NOT SIGN THIS DOCUMENT UNLESS YOU HAVE READ AND UNDERSTAND ITS CONTENTS.

You will be executing and delivering to the Lender a **Change in Terms Agreement** and **Modification of Mortgage** (the "Debt Instrument") which grants to the Lender, among other things, the power and authority to enter **JUDGMENT BY CONFESSION** against you, and to exercise rights of execution, levy, garnishment, seizure of your property and the like. Other than notices, if any, required under the Debt Instrument, these rights and powers may be exercised by the Lender without giving you any prior notice of its intention to do so.

In addition, these powers and rights may be exercised without a hearing except as otherwise required by law.

By executing and delivering this Notice and Waiver, you knowingly, voluntarily, and intelligently waive your rights to prior notice and a hearing or other judicial proceedings to determine your rights and liabilities in connection with the Debt Instrument. By signing this Notice and Waiver, you acknowledge that you understand the Lender may obtain a judgment against you, and execute upon and seize forthwith your property and assets without the opportunity to raise any defense, set-off, counterclaim, or other claim that you may have. Each of you knowingly, voluntarily, and intelligently waive your rights to any prior notice or judicial determination as a material part of the consideration for this transaction and in order to induce the Lender to enter into this transaction. You acknowledge and represent that you have consulted (or have had an opportunity to consult) with legal counsel of your choice, and with such other experts and advisors as you deemed necessary, in connection with the execution and delivery of the Debt Instrument (including without limitation the provisions of the Debt Instrument authorizing the confession of judgment and the execution upon and seizure of your property and assets without the opportunity for prior notice or judicial determination of any nature).

IN WITNESS WHEREOF, and intending to be legally bound, the undersigned has executed this Notice and Waiver as of the day, month and year set forth above.

### DO NOT SIGN THIS DOCUMENT UNLESS YOU HAVE READ

### AND UNDERSTAND ITS CONTENTS

SUZUKI FUN CENTER, INC.                    ATTEST:

By: _____              _____ V.P.
    Kenneth J. Mrozek,                          [Seal]
    President

_____   _____
Witness                     Kenneth J. Mrozek, Individually

_____   _____
Witness                     Carole A. Mrozek, Individually


## LOAN OFFICER'S CERTIFICATION

I, the undersigned loan officer, hereby certify that the foregoing Waiver of Rights was signed in my presence by the persons whose names appear above, and that I instructed he/she/they to read this entire document before signing it and, having done so, observed he/she/they read this Waiver of Rights and answered any questions he/she/they had about its contents. I further certify that I pointed out the Warrant of Attorney to Confess Judgment contained in the Loan Documents and directed that they read the Warrant of Attorney to Confess Judgment, as well as the entirety of the Loan Documents, before he/she/they signed the Loan Documents.

_____
[Loan Officer]

Exhibit "D"

# STEVENS & LEE

## LAWYERS & CONSULTANTS



111 North 6th Street
P.O. Box 679
Reading, PA 19603-0679
(610) 478-2000  Fax (610) 376-5610
www.stevenslee.com

Direct Dial:    (610) 478-2133
Email:    sja@stevenslee.com
Direct Fax:    (610) 988-0841

March 16, 2010

VIA FEDERAL EXPRESS

Suzuki Fun Center, Inc.
Attention: Kenneth J. Mrozek, President
2639 Bristol Pike
Bensalem, PA  19020

Re:    Nova Bank, successor by merger to Pennsylvania Business Bank –
Notice of Acceleration of Loan Obligations

Dear Mr. Mrozek:

We are counsel for Nova Bank, successor by merger to Pennsylvania Business Bank (the "Bank"). Suzuki Fun Center, Inc. (the "Borrower"), is in default with respect to its payment obligations to the Bank with respect to the three outstanding loan facilities (the "Loans"). The Borrower's obligations with respect to the Loans are set forth in various loan agreements and promissory notes (the "Notes"), and the Borrower's obligations under the Notes are secured by, among other things, various mortgages (the "Mortgages") in favor of the Bank against that certain real property located at 2639 Bristol Pike, Bensalem, Pennsylvania. You and your wife (the "Guarantors" and collectively with the Borrower, the "Obligors") have personally guaranteed payment of all of the Borrower's obligations to the Bank pursuant to various written guarantees signed by both of you (the "Guarantees").

As a result of the payment defaults that presently exist under the Notes, the Bank as elected to accelerate payment of all of the Borrower's outstanding Loan obligations to the Bank effective immediately. As of March 16, 2010, the total amount due the Bank with respect to the

Philadelphia   •   Reading   •   Valley Forge   •   Lehigh Valley   •   Harrisburg   •   Lancaster   •   Scranton
Williamsport   •   Wilkes-Barre   •   Princeton   •   Cherry Hill   •   New York   •   Wilmington

A PROFESSIONAL CORPORATION

# STEVENS & LEE

## LAWYERS & CONSULTANTS

Suzuki Fun Center, Inc.
March 16, 2010
Page 2

accelerated Loan obligations will be $1,662,406.95, itemized as follows:

| | |
|---|---|
| Loan No. 100146844 | |
| Principal | $1,222,557.68 |
| Accrued Interest | 40,763.26 |
| Accrued Late Charges | 3,527.45 |
| Prepayment Penalty | 12,225.58 |
| UCC Release Fees | 224.00 |
| Satisfaction Fee | 100.00 |
| Attorneys' Fees | 5,600.00 |
| | |
| Loan No. 100146885 | |
| Principal | $192,504.49 |
| Accrued Interest | 7,414.83 |
| Accrued Late Charges | 1,632.89 |
| Prepayment Penalty | 1,925.04 |
| Satisfaction Fee | 100.00 |
| | |
| Loan No. 100146885 | |
| Principal | $169,156.60 |
| Accrued Interest | 4,228.40 |
| Accrued Late Charges | 346.73 |
| Satisfaction Fee | 100.00 |
| | |
| TOTAL | $1,662,406.95 |

Additional interest will accrue on the aggregate principal balance of the Loans after March 16, 2010, at the aggregate rate of $335.96 per day. Please be advised that the Bank also has the right to increase the interest rates applicable to each of the Notes by an additional 5% per annum (which would equate to an additional amount due of $220.03 per day) as a result of the existing payment defaults. The Bank reserves the right to impose these default interest rates at any time.

The Obligors are also liable to the Bank for additional late charges and all additional attorneys fees and costs that the Bank will incur in connection with its efforts to collect the accelerated Loan obligations that are not included in the above amounts.

On behalf of the Bank, we hereby demand that the Obligors pay to the Bank the above sums, in full, by no later than March 23, 2010. In the alternative, you may contact the

SL1 985285v1/103369.00020

# STEVENS & LEE
## LAWYERS & CONSULTANTS

Suzuki Fun Center, Inc.
March 16, 2010
Page 3

undersigned by that date to arrange a face-to-face meeting with the Bank to be held within the next two weeks to discuss other possible options for the Obligors to consider.  If you fail to pay the accelerated Loan obligations to the Bank in full by March 23, 2010, or to contact us by that date to arrange a meeting, we have been authorized to commence legal proceedings to foreclose one or more of the Mortgage and/or to bring suit on the Notes and Guarantees to collect the accelerated Loan obligations.

Please contact the undersigned if you have any questions.

Very truly yours,

STEVENS & LEE

Steven J. Adams

SJA:dbd

cc:    Kenneth and Carol Mrozek (via federal express)

# STEVENS & LEE

## LAWYERS & CONSULTANTS

Suzuki Fun Center, Inc.
March 16, 2010
Page 4


bcc:    Mr. Michael Cosden (via email)